UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARWIN J. FIFIELD, SR.,

                              Plaintiff,

                                                                        DECISION AND ORDER

                                                                        07-CV-6521L

                              v.

MRS. D. EATON,

                              Defendant.
_____

       Plaintiff Darwin J. Fifield ("Fifield") brings this action against Deborah Eaton, a senior counselor at the Gowanda Correctional Facility ("Gowanda"). Fifield alleges that during his incarceration at Gowanda, the defendant insisted that Fifield incriminate himself as to uncharged criminal activity or else face the loss of parole opportunities and "good time" credit, in violation of his Fifth and Fourteenth Amendment rights and 42 U.S.C. §1983. U.S. CONST. Amend. V, XIV.

       The defendant now moves to dismiss Fifield's complaint pursuant to Fed. R. Civ. Proc. 12(c), on the grounds that plaintiff has failed to allege a violation of his Fifth Amendment rights, cannot demonstrate a liberty interest in good time credit not already earned, and in any event cannot overcome the defendant's affirmative defense of qualified immunity. (Dkt. #21). For the reasons set forth below, the defendant's motion is granted, and the complaint is dismissed.

**DISCUSSION**

**I.      Motion to Dismiss**

In deciding a motion for judgment on the pleadings pursuant Rule 12(c) of the Federal Rules of Civil Procedure, "[courts] apply the same standard as that applicable to a motion under Rule 12(b)(6). Under that test, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). Nonetheless, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See e.g.*, *Ashcroft v. Dept. of Corrections*, 2007 U.S. Dist. LEXIS 49079 (W.D.N.Y. 2007) (discussing and applying the *Twombly* standard).

**II.     Factual Background**

In 2004, Fifield pled guilty to rape in the third degree (N.Y. Penal Law § 130.25 [2]) and attempted use of a child in a sexual performance (N.Y. Penal Law §§ 110.00, 263.05); he was sentenced to an indeterminate term of imprisonment of two-and-one-third to seven years. (Dkt. #16 at 1). Fifield was received into custody on March 23, 2004, and was subsequently transferred to Gowanda by the Department of Correctional Services, in order to participate in the facility's Sex

Offender Treatment Program (the "Program"). Enrollment in the Program required Fifield to complete intake forms discussing the conduct that gave rise to his conviction. During the intake process, Fifield consistently disputed the victim's account of forcible rape, contending that the victim's participation in the underlying sexual activity was entirely voluntary and uncoerced, and that in any event, he had only pled guilty to statutory rape, the elements of which do not necessarily require the use of force. *Id*.

As a result of Fifield's refusal to "admit" to the commission of forcible rape as described in his victim's statement to police, defendant and other correction counselors terminated Fifield's participation in the Program two days after it began, on December 12, 2006. *Id.* at 2. Defendant referred Fifield to the Sex Offender Review Committee ("Committee"), with the recommendation that Fifield be terminated from the Program, due to his continued assertions that the victim's statement was untrue. The Committee adopted the counselors' recommendation, and terminated Fifield from the Program. Fifield's subsequent appeals of the Review Committee's decision, and grievances against the defendant, were denied.

On or about March 13, 2007, Fifield appeared before the Parole Board and was denied discretionary release because of, inter alia, his failure to complete the Program. *Id*. at 3. Thereafter, while incarcerated at Wyoming Correctional Facility, Fifield was denied good time credit for the same reason. *Id*.

Fifield claims that the defendant, through the Program's policy requiring assumption of responsibility for sex offenses, violated his Fifth Amendment right against self-incrimination by requiring him to falsely state that he coerced or otherwise forced his sixteen-year-old victim to

engage in sexual activities against her will, something which was not a necessary element of the crimes for which he was convicted, and which Fifield denies having done. He further claims that his termination from the Program has negatively impacted his potential release date by depriving him of the opportunity to gain parole or good time credit, in violation of his due process rights under the Fourteenth Amendment.

## III. Plaintiff's Fourteenth Amendment Claim

Defendant urges that Fifield's Fourteenth Amendment claim should be dismissed, because Fifield has no liberty interest in the parole or good time credit he alleges he was denied as a result of his termination from the Program.

The Fourteenth Amendment prohibits the government from depriving citizens of life, liberty or property without due process of law. *See e.g.*, *Wilkinson v. Austin*, 545 U.S. 209 (2005). A protected liberty interest may arise from the Due Process Clause itself, or from an expectation or interest created by state law or administrative regulations. *Id*., 545 U.S. 209 at 221-222.

It is well-settled that an inmate has no constitutionally protected liberty interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence. *See Greenholz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001). The Second Circuit has also determined that an inmate has no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release. *See* N.Y. Correct. Law §803 (outlining New York's discretionary good time credit program); *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000) (where good time credit is a

discretionary matter, inmate has no liberty interest in the opportunity to earn good time credit); *Johnson v. Baker*, 108 F.3d 10, 11 (2d Cir. 1997) (inmate who was removed from a Sex Offender Program and denied admission to a family visitation program because he refused to admit to the conduct of which he was convicted has "no basis for [an] equal protection claim," even where his refusal was made in order to preserve his then-pending appeal). *See also Lighthall v. Vadlamudi*, 2006 U.S. Dist. LEXIS 74734 at *45-*47 (N.D.N.Y.) (Report-Recommendation)(inmates have no protected liberty interest in merit time, or programs awarding good time credit), *adopted*, 2006 U.S. Dist. LEXIS 74737 (N.D.N.Y. 2006). Accordingly, plaintiff's due process claim relating to lost opportunities to earn good time credits must be dismissed.

The breadth of Fifield's good time credit allegations is unclear, but to the extent that Fifield claims that he was barred from any *already-earned* good time credit as a result of expulsion from the Program, "[Section] 1983 is not the proper vehicle . . . to seek redress for [an] alleged good-time credit deprivation [and] a writ of habeas corpus [i]s a prisoner's sole recourse in challenging the procedures used to deny him good-time credits." *Ebron v. Lantz*, 2006 U.S. Dist. LEXIS 610 at *8-*9 (D. Conn. 2006), *citing Edwards v. Balisok*, 520 U.S. 641 (1997).

## IV. Plaintiff's Fifth Amendment Claim

The Fifth Amendment Self-Incrimination Clause, applicable to the states pursuant to the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *Malloy v. Hogan*, 378 U.S. 1, 2 (1964).

For several reasons, Fifield's claim against Correction Counselor Eaton must be dismissed. First of all, Fifield concedes that he did not make any incriminating statements and does not allege that the defendant ever used, sought to use, or could have used any incriminating statement against him in a criminal proceeding. In this posture, Fifield has failed to sufficiently allege a violation of his rights under the Fifth Amendment. *See Chavez v. Martinez*, 538 U.S. 760, 766-767 (2003) ("mere coercion [to self-incriminate] does not violate the text of the Self-Incrimination Clause absent use of the compelled statements in a criminal case").

## V.  Qualified Immunity

Even if Fifield's allegations did state valid Fifth or Fourteenth Amendment claims, I find that the law governing the constitutionality of sex offender programs like the one confronted here is not sufficiently clear or uniform for Fifield to prevail, because the unsettled nature of the governing law entitles the defendant to qualified immunity.

The doctrine of qualified immunity shields government officials from liability for civil damages where their performance of their discretionary duties does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is a two-pronged analysis.

Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity. *See Baker v. Gerould*, 598 F. Supp. 2d 357, 366 (W.D.N.Y. 2009). In determining whether qualified immunity applies, the Court can initially consider whether the facts alleged show the defendant's conduct

violated a constitutional right, or consider the second prong, whether the right was such that a reasonable official would know of it. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that although "the sequence set forth in *Saucier*[1] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first"). If the plaintiff establishes that such a violation occurred, the court may examine "whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. 194 at 201. A plaintiff may show that a right is "clearly established" by: (1) identifying analogous case law establishing it; or (2) showing that the conduct in question was so egregious that no reasonable person could have believed that it would not violate clearly established rights. *See Hope v. Pelzer*, 536 U.S. 259, 265 (2002)*; United States v. Lanier*, 520 U.S. 259, 265 (1997).

Whether a right was "clearly established" at the pertinent time is generally a question of law. *See Crawford-El v. Britton*, 523 U.S. 574, 589 (1998); *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985); *Harlow*, 457 U.S. 800 at 818. However, whether a official would have reasonably believed that his conduct did not violate a clearly established right, is a mixed question of law and fact which requires a particularized focus on the salient facts of the case. *Kerman*, 374 F.3d at 109; *Lennon v. Miller*, 66 F.3d 416, 422 (2d Cir. 1995). Where, as here, there is no dispute as to the material facts, the question of reasonableness may be appropriately determined by the Court. *See Kerman*, 374 F.3d at 109; *Lennon*, 66 F.3d at 421.

---

[1]*Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Upon initial examination of the legal issues presented, I note that the Second Circuit has suggested that participation in prison programs may be conditioned on an inmate's disclosure of criminal conduct, so long as denial of program participation is "imposed for failure to answer a relevant inquiry and not for refusal to give up a constitutional right." *Johnson*, 108 F.3d 10 at 11 (inmate who was removed from a Sex Offender Program and denied admission to a family visitation program because he refused to admit to the conduct of which he was convicted has no basis for Fifth or Fourteenth Amendment claims, even where his refusal was made in order to preserve his then-pending appeal). Nonetheless, the Circuit has explicitly declined to address whether a denial of good time credits based upon an inmate's refusal to disclose criminal conduct amounts to a constitutional violation. *See United States v. Jones*, 299 F.3d 103, 111 n.2 (2d Cir. 2002) ("the Supreme Court in *Lile* was unable to reach a conclusive decision 'on the question of what standard to apply when evaluating compulsion for the purposes of the Fifth Amendment privilege against self-incrimination in a prison setting' . . . [w]e need not take any position on this specific question here, and we do not"), *citing McKune v. Lile*, 536 U.S. 24, 49-50 (2002).

Furthermore, there is no clear consensus among other federal courts concerning this issue. *See Fournier v. Corzine*, 2007 U.S. Dist. LEXIS 54110 at *48 n.18 (D.N.J. 2007) (collecting cases, and noting that "[t]he Circuit Courts have taken a range of positions with respect to the issue whether the Self-Incrimination Clause is violated by loss of eligibility for good time credits or parole based upon failure to admit either the crime of conviction, or, in connection with a rehabilitation program, uncharged sexual conduct which may be criminal"); *Martin v. Dowling*, 2006 U.S. Dist. LEXIS 67711 at *12 n.4 (D.N.J. 2006) (same); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 124, 129 n.8

(N.D.N.Y. 2004) (declining to "set forth the concise and definitive standard for adjudging Fifth Amendment compulsion challenges by prisoners" due to the fact that this issue is "an already confused area of jurisprudence," and noting that "the 'atypical and significant hardships' standard [articulated in *McKune v. Lile*] was not adopted by a majority of the Supreme Court, and in fact has not been embraced at a noticeable level by any federal court").

Therefore, upon examination of the second prong of the qualified immunity test, I find that a reasonable official would not necessarily have reasonably believed that the facts here amount to a constitutional violation. As the district court for the Northern District of New York noted in analyzing a sex offender treatment program conditioned on prisoners' disclosure of criminal conduct in exchange for the opportunity to earn good time credit, "[e]ven though a prisoner's right to be free from compelled self-incrimination has been long established . . . the standard defining that right . . . has not and is not . . . Courts have not reached a consensus on the proper legal parameters of such right; [government officials] should not [be] expected to solve the riddle either." *Donhauser*, 314 F. Supp. 2d 119 at 139. Thus, even assuming that the opportunity to participate in the Program and to earn parole and/or good time credits are constitutionally protected liberty interests, I find that an inmate's right to do so without being compelled to make potentially incriminating statements about the conduct for which he was convicted is by no means well-settled, and not a right with which the defendant should have been expected to be familiar.

## CONCLUSION

For the foregoing reasons, I find that there are no material issues of fact, and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion to dismiss the complaint (Dkt. #21) is granted, and the complaint is dismissed in its entirety, with prejudice. Plaintiff's outstanding motion for additional discovery (Dkt. #45) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 20, 2009.